UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FAQUAN HILL,<br><br>       Plaintiff<br><br>   v.<br><br>LAUREL HARRY, *et al.*,<br><br>       Defendants. | CIVIL ACTION NO. 3:24-CV-1393<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Faquan Hill, currently incarcerated at SCI-Somerset, has filed a complaint under 42 U.S.C. § 1983, arising from an incident in which he lost property during a transfer from SCI-Phoenix to SCI-Rockview. (Doc. 1). Pursuant to 28 U.S.C. § 1915A, the Court finds that Hill's complaint fails to state a claim, but will grant him leave to amend the complaint before dismissing this case.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On August 19, 2024, the Court received and docketed Hill's complaint against 27 defendants affiliated with SCI-Phoenix and SCI-Rockview. (Doc. 1). Hill seeks leave to proceed *in forma pauperis*. (Doc. 6).

Hill alleges as follows: On August 29, 2022, Hill was temporarily transferred from SCI-Rockview, where he was normally incarcerated, to SCI-Phoenix for a court appearance. He brought with him roughly 1100 pages of legal papers, 20 pictures, and one composition book. On the evening of August 29, he was "cell extracted" after a suicide attempt, and transferred to a suicide watch block. The following morning, correctional officers Shoanberger, Lentz, and Greaves told Hill that his property might still be left in the cell he was extracted from.

These officers said that two other officers, Lieutenants Mertin and Baity, refused to have Hill's property packed up because they were angry that Hill had caused them to have to extract him "and because [Hill] made too many calls to the abuse/PREA hotline about the prison treatment." Later, an unnamed intake sergeant told Shoanberger and Lentz that he had packed Hill's property on a bus headed to SCI-Benner, and the property would "find its way" back to SCI-Rockview. Hill argued that the property should have been sent back with him, and Shoanberger "said that would have been true if [Hill] didn't upset Lt. Mertin and Lt. Baity." When Hill returned to SCI-Rockview, another sergeant asked where Hill's property was, and Shoanberger replied: "[H]e pissed off the wrong people so it['s] now lost."

Hill's property never arrived at SCI-Rockview. Hill made verbal and written grievances at both prisons, but officials at each prison blamed the other prison for the lost property. Hill alleges that the loss of his legal documents "caused [his] criminal case to be continued 10 times," "cause[d his] PCRA to be ultimately denied," and "caused [his] custody case to be closed and [his] child to become abducted by his mother."

## II.     28 U.S.C. § 1915A S<small>CREENING</small>

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6)

of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a

plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative

4

amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III. DISCUSSION**

Hill alleges that each defendant violated his right to freedom of speech, his right to keep his legal mail private, and his right of access to the courts.

A. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

In this case, most of the 27 defendants are not mentioned in the body of the complaint. It appears that Hill named numerous defendants because they have supervisory authority or were somehow involved in responding to Hill's grievances. Neither is sufficient to establish liability under Section 1983. *See Dooley*, 957 F.3d at 374. Hill also named the Pennsylvania Department of Corrections, which is not a "person" that can be sued under Section 1983. *See Adams v. Hunsberger*, 262 F. App'x 478, 481 (3d Cir. 2008). Therefore, the Court assesses Hill's

claims against those individuals for whom the complaint offers a factual basis to infer personal involvement in the alleged wrongs.

### B. RETALIATION

The Court interprets Hill to allege that the defendants retaliated against him for making "calls to the abuse/PREA hotline," in violation of the First Amendment. An inmate retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)). To state a prima facie case of First Amendment retaliation, a plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski*, 857 F.3d at 156 (citations and quotations omitted).

A prisoner's PREA complaint, or expression of intent to file a PREA complaint, constitutes protected activity. *Naranjo v. Walter*, No. 22-3435, 2023 WL 5928506, at *2 (3d Cir. Sept. 12, 2023) (citing *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016)). Hill alleges that other officers told him that Lieutenants Mertin and Baity were angry about his PREA complaints. Hill offers no detail about the PREA complaints, and there are no facts supporting a reasonable inference that these officers from SCI-Phoenix (where Hill was only staying for short periods) were implicated in the complaints. *See Nunez v. Wetzel*, No. 1:21-CV-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (listing dismissals of retaliation claims where the alleged retaliator was not the target of the protected activity).

Moreover, the complaint does not allege an adverse action by Martin or Baity. Although they were allegedly "angry" and "refused to have [Hill's property] packed up," the belongings were ultimately packed by another officer. To the extent there was an adverse action, it was taken by this third, unnamed officer, who sent Hill's belongings to the wrong prison. But Hill offers no facts supporting a reasonable inference that this officer was aware of his PREA complaints, or that they were in any way a "substantial or motivating factor" in that officer's treatment of his property. The complaint fails to state a claim on this ground.

### C. Privacy of Legal Mail

Next, Hill asserts a violation of his "rights to keep [his] legal mail private." An inmate can state a First Amendment claim by alleging a pattern or practice of opening legal mail outside the inmate's presence. *Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir. 2020). However, there is no allegation that any officer opened Hill's mail. Hill presumably means that his rights to privacy were violated when the officers lost his documents, some of which had been legal mail. But even if the defendant(s) knew these were legal documents, there is no indication that any defendant reviewed privileged material, or that the review was for an improper purpose. The allegation that the documents were ultimately lost or destroyed does not itself support an inference that any defendant violated Hill's right to private legal mail.

### D. Denial of Access to Courts

Finally, Hill pursues a claim for denial of access to the courts based on the loss of his legal documents. Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury," i.e., that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that

7

may be awarded as recompense" for the lost claim other than in the present denial of access suit. *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). The complaint must describe the underlying legal claim well enough to show that it is "more than mere hope." *Monroe*, 536 F.3d at 206.

By this standard, Hill's bare allegations that the missing documents "caused" continuances of his trial and "caused" him to lose his PCRA case are insufficient.[1] *See Monroe*, 536 F.3d at 206 (affirming dismissal where defendants seized legal documents and plaintiffs "alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them."); *see also Heath v. Link*, 787 F. App'x 133, 136 (3d Cir. 2019) (plaintiff failed to "describe the [seized] legal materials or the claims the materials would purportedly support").

## IV.  CONCLUSION

The Court will grant the motion to proceed *in forma pauperis* (Doc. 6) and grant Hill the opportunity to file an amended complaint prior to dismissing this case. *Grayson*, 293 F.3d at 108. An appropriate Order follows.

**Dated: December 9, 2024**               *s/ Karoline Mehalchick*
                                           **KAROLINE MEHALCHICK**
                                           **United States District Judge**

---

[1] Hill could not state a claim based on his custody case, because only challenges to a criminal sentence or conditions of confinement support an access-to-courts injury. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355.